# 2004 DTA 77

## TRIBUNAL DE CIRCUITO DE APELACIONES
## REGION JUDICIAL DE SAN JUAN
## PANEL I

DEPARTAMENTO DE LA VIVIENDA DE PUERTO RICO
Recurrida

v.

UMPIERRE & RODRIGUEZ, S.E.
Recurrente

Núm. KLCE-03-01189

San Juan, Puerto Rico, a 11 de marzo de 2004

Panel integrado por su Presidente, el Juez Brau Ramírez,
y los Jueces González Rivera y Rivera Martínez

González Rivera, Juez Ponente

## TEXTO COMPLETO DE LA RESOLUCION

Umpierre & Rodríguez, S.E. (en adelante la parte peticionaria) solicita la revocación de la Resolución emitida el 26 de agosto de 2003 por el Tribunal de Primera Instancia, Sala Superior de San Juan. Mediante el referido dictamen se declaró *"No Ha Lugar"* la moción de sentencia sumaria presentada por la peticionaria.

Por los fundamentos que exponemos a continuación, denegamos la expedición del recurso instado.

### I

El 12 de noviembre de 2002, el Departamento de la Vivienda (en adelante el Departamento), presentó una Petición de Expropiación Forzosa para la adquisición de la propiedad que a continuación se describe:

*"URBANA: Parcela de terreno radicada en el Barrio Santurce del término municipal de San Juan, con un área superficial de dos mil setecientos sesenta y seis punto cero cero uno metros cuadrados (2766.001 m.c.), equivalentes a punto siete mil treinta y siete cuerdas (.7037 c.), según mensura realizada por el Departamento de la Vivienda de Puerto Rico, en lindes: por el Norte, con la Ave. Ponce de León; por el Sur, con la Ave. Fernández Juncos y la parcela 055-011; por el Este, con las parcelas 055-006, 055-008, 055-009 y 055-010 y por el Oeste, con las parcelas 055-014 y 055-003".*

El Departamento acompañó la Solicitud de Propuestas Número DPTV-RFP-2003-004-Desarrollo de Parcelas en la Manzana 55, ubicado entre la Avenida Ponce de León, la Avenida Fernández Juncos y la Calle Mayol en Santurce, como complejo mixto de vivienda multifamiliar, comercios y estacionamientos. Conjuntamente, incluyó la *"Declaración para la Adquisición y Entrega Material de la Propiedad"*. Asimismo, el Departamento consignó en el Tribunal la cantidad de $1,463,596.00 equivalentes a $529.14 por metro cuadrado.

Como dueño extra registral, la peticionaria radicó su Contestación a Demanda y Petición de Retiro de Fondos. En la misma acreditó su título; no obstante, impugnó el dinero consignado en la expropiación por entender que no era justo ni razonable.

 

El 26 de marzo de 2003, la peticionaria radicó un requerimiento de admisiones. En síntesis, solicitó que se admitiera que la Solicitud de Propuesta establecía el precio de venta de los solares expropiados en $790.82 el metro cuadrado y que sólo le fue pagado $521.59 por el metro cuadrado. Posteriormente, la parte peticionaria presentó una Moción Solicitando Sentencia Sumaria. Alegó que los hechos que surgen del requerimiento quedaron admitidos, pues el Departamento no las negó dentro del término de veinte (20) días dispuesto en la Regla 33 de las de Procedimiento Civil de 1979, 32 L.P.R.A. Ap. III. De tal modo, requirió que se adjudicara la cantidad de $2,187,408.90 como justa compensación.

Por su parte, el Departamento objetó la solicitud de sentencia sumaria. Planteó que el estudio de valoración preparado por el Departamento, en la Solicitud de Propuesta, no podía ser utilizado, toda vez que el único método aceptable es el Método de Ventas Comparables.

El 26 de agosto de 2003, el foro de instancia declaró *"No Ha Lugar"* la moción de sentencia sumaria. Estableció que el método utilizado para determinar el valor en el mercado de una propiedad es el método de Ventas Comparables o Mercado. Descartó el estudio de valoración realizado por el Departamento. Concluyó que la Solicitud de Propuesta no constituye una transacción que se repute compraventa y mucho menos pretende vender una propiedad inmueble comparable al sujeto, sino que se trata de una transacción particular para la compra y desarrollo de dicho inmueble.

Inconforme, Umpierre & Rodríguez recurre ante nos mediante el presente recurso. Señala como fundamentos de revocación la comisión de cuatro errores: (a) no resolver las mociones para que se dictara sentencia sumaria por haberse admitido los requerimientos de admisiones; (b) cuestiona si ¿es el ánimo de lucro y la especulación con terrenos, un fin público legítimo, que permita la expropiación de ciertos terrenos?; (c) si ¿es el método de valoración conocido como ventas comparables el único método admisible para determinar la justa compensación de un inmueble expropiado?; y (d) no determinar cuáles hechos no están en controversia de acuerdo a la Regla 36.4 de Procedimiento Civil.

## II

La sección 7 de la Carta de Derechos de la Constitución del Estado Libre Asociado de Puerto Rico consagra el derecho fundamental del ser humano al disfrute de la propiedad y la incapacidad del Estado de privar a una persona de esa propiedad sin un debido proceso de ley. Por su parte, la sección 9 de la Carta de Derechos dispone, en lo pertinente, que: *"no se tomará o perjudicará la propiedad privada para uso público a no ser mediante el pago de una justa compensación y de acuerdo con la forma provista por ley"*. A su vez, el Artículo 282 del Código Civil, 31 L.P.R.A., sec. 1113, dispone: *"nadie podrá ser privado de su propiedad, sino por autoridad competente, por causa justificada de utilidad pública o beneficio social y mediante el pago de una justa compensación que se fijará en la forma provista por ley"*.

El derecho de expropiación es un atributo inherente y necesario de la soberanía del Estado y es superior a todos los derechos de propiedad. *López v. Autoridad de Energía Eléctrica*, **2000 J.T.S. 126**, resuelto el 30 de junio de 2000; *E.L.A. v. Registrador*, 111 D.P.R. 117 (1981); *Pueblo v. 632 Metros Cuadrados de Terreno*, 74 D.P.R. 961 (1953). Es un procedimiento *in rem* dirigido contra la propiedad, no contra el demandado en particular. *Administración de Terrenos de Puerto Rico v. Nerashoford Development Corp.*, **94 J.T.S. 113**.

En *E.L.A. v. Fonalledas Córdova*, 84 D.P.R. 573, 579 (1962), el Tribunal Supremo expresó que *"la justa compensación a que tiene derecho el dueño de un predio expropiado es aquélla que represente todo el valor de la propiedad al tiempo de la incautación ... o sea, el precio que un comprador estaría dispuesto a pagar en una venta voluntaria, considerando para ello las condiciones en que se halle el bien a la fecha de expropiación y el uso más productivo o beneficioso a que podría dedicarse dentro de un futuro razonablemente cercano"*.

Nuestro Tribunal Supremo ha expresado que el método de valoración conocido como Ventas Comparables

o Mercado utiliza como evidencia los precios pagados en compraventas de propiedades similares o comparables al sujeto expropiado. Dichas ventas deben ser contemporáneas, voluntarias y similares a dicho sujeto. *Pamel Corp. v. E.L.A.,* 124 D.P.R. 853 (1989); *E.L.A. v. Fonalledas, supra; Autoridad sobre Hogares v. Colón,* 73 D. P.R. 215 (1952);

## III

En el segundo y tercer señalamiento de error, la parte peticionaria plantea que incidió el foro de instancia en el método de valoración utilizado, por lo cual serán discutidos en conjunto.

En el caso que nos ocupa, vemos que se trata de una expropiación iniciada por el Departamento de la Vivienda para innegables fines públicos, o sea para la construcción de un complejo mixto de vivienda multifamiliar, comercios y estacionamiento. Por lo que la alegación de la parte peticionaria en cuanto a que la expropiación efectuada por el Departamento tiene como fin público lucrarse, es totalmente inmeritoria.

La parte peticionaria insiste que la cantidad de $790.82 por metro cuadrado representa la justa compensación a que tiene derecho, ello a base de las condiciones económicas requeridas a los licitadores en la solicitud de Propuestas Número DPTV-RFP-2003-004. Hemos examinado dicha propuesta. La misma no tiene otro alcance que aquél de requerir propuestas, conforme a los parámetros, términos y condiciones que se detallan en la misma para el desarrollo de obra pública. El mismo no reúne los requisitos de una compraventa voluntaria o contemporánea a la expropiación ni constituye una análisis de costo o conclusión de valor a base de ventas netas capitalizadas. En consecuencia, el método a utilizarse debe ser el de ventas comparables o mercado. A base de las anteriores consideraciones, resolvemos que no erró el foro de instancia al no aceptar la Propuesta DPTV-RFP-2003-004 para establecer el justo valor del bien expropiado.

En su primer señalamiento de error, la parte peticionaria plantea que al no contestar el Departamento el requerimiento de admisiones, se dan por admitidas automáticamente, conforme a la Regla 33 de Procedimiento Civil. Es decir, que quedó establecido que la remuneración adecuada era de $790.82 por metro cuadrado. Sostienen que no habiendo controversia de hechos en cuanto a la compensación a pagarse, procedía resolver mediante sentencia sumaria. No le asiste la razón.

A la moción presentada por la peticionaria solicitando se diera por admitido lo requerido y se concediera lo solicitado en la moción de sentencia sumaria, el Tribunal dispuso lo siguiente:

*"Se concedió término adicional a la parte peticionaria para presentar sus alegaciones. Una vez presentadas esas alegaciones, quedaría sometido el planteamiento de derecho".*

Es evidente que el Tribunal de Primera Instancia declaró *"No Ha Lugar"* la solicitud para que se dieran por admitido los requerimientos de admisiones. Ante tales circunstancias, existen genuinas controversias sobre el método de valoración de la propiedad expropiada. Así, en acuerdo con la política pública en favor de que los casos se diluciden y resuelvan en los méritos, el foro recurrido actuó correctamente al denegar la moción de sentencia sumaria. Regla 36 de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 36; *Audiovisual Lang. v. Sist. Est. Natal Hnos.,* 144 D.P.R. 563 (1997); *PFZ Props. Inc. v. Gen Acc. Ins. Co.,* 136 D.P.R. 881 (1994); *Amaro González v. First Federal Savings Bank,* 132 D.P.R. 1042 (1993); *Presiding Bishop CJC of LDS v. Purcell,* 117 D.P.R. 714 (1986).

Por último, la parte peticionaria le imputa al foro de instancia el no haber incluido determinaciones de hechos no controvertidos en su resolución denegando la solicitud de sentencia sumaria, conforme a la Regla 36.4 de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 36.4. Aunque es de carácter mandatorio para el Tribunal hacer las determinaciones de hechos sobre los cuales no existe controversia sustancial en hechos materiales que están realmente y de buena fe controvertidos, la resolución recurrida denegando la sentencia sumaria está bien

fundamentada, por lo que tal omisión no impidió nuestra función revisora.

Al hacer un análisis de la determinación recurrida, somos del criterio que los fundamentos de derecho utilizados por el Tribunal de Primera Instancia para justificar su determinación son esencialmente correctos. Como tribunal apelativo, no intervendremos con el ejercicio de la discreción de un tribunal de instancia, salvo que se demuestre que hubo un craso abuso de la misma, o que el tribunal actuó con prejuicio o parcialidad, o que se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo, y que la intervención en esta etapa evitará un perjuicio sustancial. *Lluch v. España Service Sta.,* 117 D.P.R. 729 (1986). Concluimos que el Tribunal de Primera Instancia no incurrió en abuso de discreción al declarar No Ha Lugar la referida moción de sentencia sumaria.

**IV**

Por los fundamentos expresados, dictaminamos que es procedente denegar la expedición del auto de *certiorari* solicitado.

Lo acordó el Tribunal y lo certifica la Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General